IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| RAYMOND P. OWENS, #214918, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:10-CV-652-TMH |
| | ) | [WO] |
| | ) | |
| CORRECTIONAL MEDICAL | ) | |
| SERVICES, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I.  INTRODUCTION**

This 42 U.S.C. § 1983 action is before the court on a complaint filed by Raymond P. Owens ["Owens"], an indigent state inmate, challenging the adequacy of medical treatment provided to him for pain in his right shoulder.  The claims pending before this court relate to treatment provided to Owens during his incarceration at the Draper Correctional Facility ["Draper"] and the Limestone Correctional Facility ["Limestone"].[1]  The defendants remaining before this court are Correctional Medical Services, Inc. ["CMS"], the contract medical care provider for the Alabama Department of Corrections during the period of time relevant to the instant complaint; MHM Correctional Services, Inc. ["MHM"], the contract mental health care provider for the state prison system; Dr. Tai Q. Chung, a free world board certified orthopedic

---

[1]The court previously dismissed claims arising from medical treatment provided to Owens during previous terms of incarceration at the Southeast Correctional Center, a private prison in Basile. Louisiana, and the Perry County Correctional Facility, a private prison in Perry County, Alabama.

surgeon under contract with CMS to provide orthopedic services to state inmates; Stephen Bullard, a former associate commissioner for the Alabama Department of Corrections; and Leeposey Daniels, the warden of Draper at the time of the complaint.

The defendants filed special reports and relevant supporting evidentiary materials, including affidavits and medical records, addressing Owens' claims for relief.  Pursuant to the orders entered in this case, the court deems it appropriate to construe these reports as motions for summary judgment.  *Order of November 29, 2010 - Doc. No. 43*.  Thus, this case is now pending on the defendants' motions for summary judgment. Upon consideration of these motions, the evidentiary materials filed in support thereof and the plaintiff's response to the motions, the court concludes that the defendants' motions for summary judgment are due to be granted.

## II.  STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'"  *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation to former rule omitted); Fed.R.Civ.P. Rule 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").[2]  The party moving for summary

---

[2]Effective December 1, 2010, Rule 56 was "revised to improve the procedures for presenting and deciding summary-judgment motions."  Fed.R.Civ.P. 56 Advisory Committee Notes.  Under this revision, "[s]ubdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word -- genuine 'issue' becomes genuine 'dispute.'  'Dispute' better reflects the focus of a summary-judgment determination."  *Id.*

judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue [- now dispute -] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-324.

The defendants have met their evidentiary burden and demonstrated the absence of any genuine dispute of material fact. Thus, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed.R.Civ.P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact by [citing to materials in the record including affidavits, relevant documents or other materials] the court may ... grant summary judgment if the motion and supporting materials -- including the facts considered undisputed -- show that the movant is entitled to it.")  A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263.

In civil actions filed by inmates, federal courts

---

"'Shall' is also restored to express the direction to grant summary judgment." *Id.*  Thus, although Rule 56 underwent stylistic changes, its substance remains the same and, therefore, all cases citing the prior versions of the rule remain equally applicable to the current rule.

> must distinguish between evidence of disputed facts and disputed matters of
> professional judgment.   In respect to the latter, our inferences must accord
> deference to the views of prison authorities [and medical personnel].   Unless a
> prisoner can point to sufficient evidence regarding such issues of judgment to
> allow him to prevail on the merits, he cannot prevail at the summary judgment
> stage.

*Beard v. Banks*, 548 U.S. 521, 530, 126 S.Ct. 2572, 2578, 165 L.Ed.2d 697 (2006) (internal

citation omitted).   Consequently, to survive the defendants' properly supported motions for

summary judgment, Owens is required to produce "sufficient [favorable] evidence" which would

be admissible at trial supporting his claims of constitutional violations.   *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 249 (1986); Rule 56(e), *Federal Rules of Civil Procedure*.   "If the

evidence [on which the nonmoving party relies] is merely colorable ... or is not significantly

probative ... summary judgment may be granted."   *Id*. at 249-250.   "A mere 'scintilla' of

evidence supporting the opposing party's position will not suffice; there must be enough of a

showing that the [trier of fact] could reasonably find for that party.   *Anderson v. Liberty Lobby*,

477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)."   *Walker v. Darby*, 911 F.2d 1573,

1576-1577 (11th Cir. 1990).   Conclusory allegations based on subjective beliefs are likewise

insufficient to create a genuine issue of material fact and, therefore, do not suffice to oppose a

motion for summary judgment.   *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275,

1279 (11th Cir. 2001); *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (plaintiff's

"conclusory assertions ..., in the absence of [admissible] supporting evidence, are insufficient to

withstand summary judgment."); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (grant of

summary judgment appropriate where inmate produces nothing beyond "his own conclusory

allegations" challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11[th]

4

Cir. 1984) ("mere verification of party's own conclusory allegations is not sufficient to oppose summary judgment...."). Hence, when a plaintiff fails to set forth specific facts supported by evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (If on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Property Located at 5800 SW 74th Avenue, Miami, Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004). What is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248; *Lofton v. Secretary of the Department of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment."). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted). To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party,

there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates there is no genuine dispute of material fact and the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper.  *Celotex*, 477 U.S. at 323-324 (summary judgment appropriate where pleadings, evidentiary materials and affidavits before the court show no genuine dispute as to a requisite material fact); *Waddell*, 276 F.3d at 1279 (to establish a genuine dispute of material fact, nonmoving party must produce evidence such that reasonable trier of fact could return a verdict in his favor).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact.  *Beard*, 548 U.S. at 525, 126 S.Ct. at 2576; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990).  Thus, the plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case.  In this case, Owens fails to demonstrate a requisite genuine dispute of material fact in order to preclude summary judgment. *Matsushita*, *supra*.

## III.  DISCUSSION

### A.  Associate Commissioner Bullard and Warden Daniels

Owens alleges that defendants Bullard and Daniels violated his constitutional rights because they did not intervene on his behalf to ensure that he received a different mode of

medical care for his shoulder pain.  Owens asserts that defendant Bullard served as the prison system's liaison to the private prisons and is therefore responsible for the medical treatment provided to him during his confinement at those facilities.  *Amendment to the Complaint - Doc. No. 6* at 1-2.  In support of this assertion, Owens maintains that during his confinement in two private prisons prior to November of 2007, Bullard refused to approve funds for a surgical procedure.  As previously noted, *infra* at n.1, the court dismissed all claims with respect to the constitutionality of medical treatment provided to Owens during his confinement at these private prison facilities.  *September 29, 2010 Order and Opinion - Doc. No. 21*.  Moreover, Bullard denies the allegation presented against him by Owens.  Owens makes no allegations against Bullard regarding the claims arising from medical treatment provided to him at Draper and Limestone, the only claims pending before this court.

Owens maintains that Daniels, as the warden of Draper, "was the final arbiter [with respect] to the complaints of the plaintiff's serious medical needs that were being ignored." *Id*. at 2.  The assertions against defendant Daniels entitle Owens to no relief.

> The law does not impose upon correctional officials a duty to directly supervise health care personnel, to set treatment policy for the medical staff or to intervene in treatment decisions where they have no actual knowledge that intervention is necessary to prevent a constitutional wrong.  *See Vinnedge v. Gibbs*, 550 F.2d 926 (4th Cir. 1977) (a medical treatment claim cannot be brought against managing officers of a prison absent allegations that they were personally connected with the alleged denial of treatment). Moreover, "supervisory [correctional] officials are entitled to rely on medical judgments made by medical professionals responsible for prisoner care.  *See, e.g., Durmer v. O'Carroll*, 991 F.2d 64, 69 (3rd Cir. 1993); *White v. Farrier*, 849 F.2d 322, 327 (8th Cir. 1988)."  *Williams v. Limestone County, Ala.*, 198 Fed.Appx. 893, 897 (11th Cir. 2006).

7

*Cameron v. Allen, et al.*, 525 F.Supp.2d 1302, 1307 (M.D. Ala. 2007).

To the extent that Owens seeks relief from defendant Daniels for the treatment provided by medical personnel at Draper and Limestone – and, with respect to any claim Owens may have against Bullard with relating  to this treatment, assuming that the defendants exerted some authority over those persons responsible for the provision of medical treatment – the law is well settled "that Government officials may not be held liable for the unconstitutional conduct of their subordinates under the theory of *respondeat superior* [or vicarious liability]... . *Robertson v. Sichel,* 127 U.S. 507, 515–516, 8 S.Ct. 1286, 3 L.Ed. 203 (1888) ('A public officer or agent is not responsible for the misfeasances or position wrongs, or for the nonfeasances, or negligences, or omissions of duty, of the subagents or servants or other persons properly employed by or under him, in the discharge of his official duties').  Because vicarious liability is inapplicable to ... § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676, 129 S.Ct. 1937, 1948 (2009); *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) ("[S]upervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability."); *Marsh v. Butler County*, 268 F.3d 1014, 1035 (11th Cir. 2001) (supervisory official "can have no respondeat superior liability for a section 1983 claim."); *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir.2003) (concluding supervisory officials are not liable on the basis of respondeat superior or vicarious liability); *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999), citing *Belcher v. City of Foley*, 30 F.3d 1390, 1396 (11th Cir. 1994) (42 U.S.C. § 1983 does not allow a plaintiff to hold

supervisory officials liable for the actions of their subordinates under either a theory of respondeat superior or vicarious liability). "Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Iqbal*, 556 U.S. at 677, 129 S.Ct. 1949. Thus, liability for medical treatment provided to Owens while confined in a facility operated by the Alabama Department of Corrections could attach to defendant Daniels, and for that matter defendant Bullard, only if they "personally participate[d] in the alleged unconstitutional conduct or [if] there is a causal connection between [their] actions ... and the alleged constitutional deprivation." *Cottone*, 326 F.3d at 1360.

Owens has presented no evidence sufficient to create a genuine issue of disputed fact with respect to his claim of deliberate indifference by the correctional defendants. There is nothing before the court which indicates that Bullard and Daniels personally participated in or had any involvement, direct or otherwise, with the medical treatment provided to Owens during his confinement at Draper and Limestone; rather, it is undisputed that they did not participate in the provision of treatment to Owens. The evidentiary materials before the court demonstrate that medical personnel made all decisions relative to the course of treatment provided to Owens, and that they provided treatment to Owens in accordance with their professional judgment upon assessment of his condition.

In light of the foregoing, defendants Bullard and Daniels are liable for decisions of medical personnel only if their actions bear a causal relationship to the purported violation of Owens' constitutional rights. To establish the requisite causal connection and therefore avoid entry of summary judgment in favor of these defendants, Owens must present sufficient evidence

which would be admissible at trial of either "a history of widespread abuse [that] put[] [the defendants] on notice of the need to correct the alleged deprivation, and [they] fail[ed] to do so...." or "a ... custom or policy [that] result[ed] in deliberate indifference to constitutional rights, or ... facts [that] support an inference that [Bullard and Daniels] directed the [facilities' health care staffs] to act unlawfully, or knew that [the particular staff] would act unlawfully and failed to stop them from doing so." *Cottone*, 326 F.3d at 1360 (internal punctuation and citations omitted). A thorough review of the pleadings and evidentiary materials submitted in this case demonstrates that Owens has failed to meet this burden.

The record before the court contains no probative evidence to support an inference that Bullard or Daniels directed medical personnel to act unlawfully or knew that they would act unlawfully and failed to stop such action. In addition, Owens has presented no evidence of obvious, flagrant or rampant abuse of continuing duration in the face of which the correctional defendants failed to take corrective action; instead, the medical records indicate that Owens had continuous access to medical personnel and received treatment for his complaints of shoulder pain throughout his incarceration. Finally, the evidentiary materials submitted by the defendants demonstrate that the challenged medical treatment provided during Owens' confinement at Draper and Limestone did not occur pursuant to a policy enacted by Bullard or Daniels. Thus, the requisite causal connection does not exist in this case and liability under the custom or policy standard is not warranted. *Cf. Employment Div. v. Smith,* 494 U.S. 872, 877, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990); *Turner v. Safely,* 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). Summary judgment is therefore due to be granted in favor of defendants Bullard and Daniels.

## B.  MHM Correctional Services, Inc.

It is undisputed that "MHM ... [contracted] with the Alabama Department of Corrections to provide mental health treatment to inmates....  At no time [did] MHM or any of it employees ever provide[] medical care or treatment ... to inmates in the control and custody of the Department." *Exhibit A to the Special Report of MHM (Affidavit of Teresa Houser) - Doc. No. 33-1* at 1-2.  Based on the foregoing, it is clear that MHM is entitled to summary judgment in this matter.

## C.  Correctional Medical Services, Inc. and Dr. Tai Q. Chung

Owens asserts that upon his arrival at Draper in November of 2007 correctional medical personnel provided inadequate medical treatment for his right shoulder pain. *Complaint - Doc. No. 1* at 3.  Owens further alleges that, due to monetary constraints set by correctional officials and prison medical personnel, Dr. Chung performed a less efficacious surgery than Owens believed necessary to treat his condition properly. *Id*. CMS and Dr. Chung deny that they acted with deliberate indifference to Owens' shoulder pain and, instead, maintain that Owens received appropriate treatment for this condition.

After his transfer to Draper, Owens made his initial complaint of right shoulder pain on May 5, 2008. *Exhibit 5 to the Special Report of CMS (Medical Records of Raymond Owens) - Doc. No. 24-5* at 36. Based on this complaint, Donald McArthur, a certified physician's assistant, scheduled an appointment with Owens at the health care unit on May 21, 2008. After his examination of Owens, and based on Owens' medical history, McArthur submitted a request that Owens be referred to a free world orthopedist for examination.  Dr. Paul Corbier approved this

request and referred Owens to Dr. Chung for further evaluation and treatment.

Dr. Chung first examined Owens on June 4, 2008.  After this examination and upon receipt of radiological images of Owens' shoulder, Dr. Chung determined that Owens suffered from right shoulder impingement syndrome and advised Owens of a surgical option as a potential treatment for this condition.  Dr. Chung informed Owens of the risks associated with surgery, including the possibility that the procedure would not alleviate the pain associated with his condition, and Owens decided that he wished to proceed with surgery.  Dr. Chung performed a "[r]ight should arthroscopy, acromioplasty, resection of distal end of clavical, debridement of osteophte distal clavicale" procedure on October 3, 2008, at Baptist Medical Center East in Montgomery, Alabama.  *Exhibit 2 to the Special Report of Dr. Tai Q. Chung (Operative Report) - Doc. No. 30-2 at 10.*  After his surgery, correctional medical personnel continued to provide treatment to Owens for his right shoulder.

To prevail on a claim concerning an alleged denial of adequate medical treatment, an inmate must, at a minimum, show that the defendants acted with deliberate indifference to his serious medical needs.  *Estelle v. Gamble*, 429 U.S. 97 (1976); *Taylor v. Adams*, 221 F.3d 1254 (11th Cir. 2000);  *McElligott v. Foley*, 182 F.3d 1248 (11th Cir. 1999); *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989); *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir.1986). Specifically, medical personnel may not subject an inmate to "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs."  *Estelle*, 429 U.S. at 106, 97 S.Ct. at 292; *Adams v. Poag*, 61 F.3d 1537, 1546 (11th Cir. 1995) (citation and internal quotations omitted) (As directed by *Estelle*, a plaintiff must establish "not merely the knowledge

of a condition, but the knowledge of necessary treatment coupled with a refusal to treat or a

delay in [the acknowledged necessary] treatment."

> That medical malpractice-negligence by a physician-is insufficient
> to form the basis of a claim for deliberate indifference is well
> settled. *See Estelle v. Gamble,* 429 U.S. 97, 105-07, 97 S.Ct. 285,
> 292, 50 L.Ed.2d 251 (1976); *Adams v. Poag,* 61 F.3d 1537, 1543
> (11th Cir.1995). Instead, something more must be shown.
> Evidence must support a conclusion that a prison physician's
> harmful acts were intentional or reckless. *See Farmer v. Brennan,*
> 511 U.S. 825, 833-38, 114 S.Ct. 1970, 1977-79, 128 L.Ed.2d 811
> (1994); *Cottrell v. Caldwell,* 85 F.3d 1480, 1491 (11th Cir.1996)
> (stating that deliberate indifference is equivalent of recklessly
> disregarding substantial risk of serious harm to inmate); *Adams,* 61
> F.3d at 1543 (stating that plaintiff must show more than mere
> negligence to assert an Eighth Amendment violation); *Hill v.
> Dekalb Regional Youth Detention Ctr.,* 40 F.3d 1176, 1191 n. 28
> (11th Cir.1994) (recognizing that Supreme Court has defined
> "deliberate indifference" as requiring more than mere negligence
> and has adopted a "subjective recklessness" standard from criminal
> law); *Qian v. Kautz,* 168 F.3d 949, 955 (7th Cir.1999) (stating
> "deliberate indifference" is synonym for intentional or reckless
> conduct, and that "reckless" conduct describes conduct so
> dangerous that deliberate nature can be inferred).

*Hinson v. Edmond*, 192 F.3d 1342, 1345 (11th Cir. 1999).

In order to properly establish "deliberate indifference to [a] serious medical need ...,

Plaintiff[] must show: (1) a serious medical need; (2) the defendants' deliberate indifference to

that need; and (3) causation between that indifference and the plaintiff's injury." *Mann v. Taser

Int'l, Inc.*, 588 F.3d 1291, 1306-1307 (11th Cir. 2009). When seeking relief based on deliberate

indifference, an inmate is required to establish "an objectively serious need, an objectively

insufficient response to that need, subjective awareness of facts signaling the need and an actual

inference of required action from those facts." *Taylor*, 221 F.3d at 1258; *McElligott*, 182 F.3d

13

at 1255 (for liability to attach, the official must know of and then disregard an excessive risk to

the prisoner).  Thus, deliberate indifference occurs only when a defendant "knows of and

disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of

facts from which the inference could be drawn that a substantial risk of serious harm exists and

he must also draw the inference." *Farmer*, 511 U.S. at 837; *Johnson v. Quinones*, 145 F.3d 164,

168 (4th Cir. 1998) (defendant must have actual knowledge of a serious condition, not just

knowledge of symptoms, and ignore known risk to serious condition to warrant finding of

deliberate indifference).  Furthermore, "an official's failure to alleviate a significant risk that he

should have perceived but did not, while no cause for commendation, cannot under our cases be

condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838.

> In articulating the scope of inmates' right to be free from deliberate
> indifference, ... the Supreme Court has ... emphasized that not 'every claim by a
> prisoner that he has not received adequate medical treatment states a violation of
> the Eighth Amendment.' *Estelle,* 429 U.S. at 105, 97 S.Ct. at 291; *Mandel,* 888
> F.2d at 787.  Medical treatment violates the eighth amendment only when it is 'so
> grossly incompetent, inadequate, or excessive as to shock the conscience or to be
> intolerable to fundamental fairness.' *Rogers,* 792 F.2d at 1058 (citation omitted).
> Mere incidents of negligence or malpractice do not rise to the level of
> constitutional violations.  *See Estelle,* 429 U.S. at 106, 97 S.Ct. at 292 ('Medical
> malpractice does not become a constitutional violation merely because the victim
> is a prisoner.'); *Mandel*, 888 F.2d at 787-88 (mere negligence or medical
> malpractice 'not sufficient' to constitute deliberate indifference); *Waldrop,* 871
> F.2d at 1033 (mere medical malpractice does not constitute deliberate
> indifference).  Nor does a simple difference in medical opinion between the
> prison's medical staff and the inmate as to the latter's diagnosis or course of
> treatment support a claim of cruel and unusual punishment.  *See Waldrop,* 871
> F.2d at 1033 (citing *Bowring v. Godwin,* 551 F.2d 44, 48 (4th Cir.1977)).

*Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991); *Taylor*, 221 F.3d at 1258 (citation and

internal quotations omitted) (To show deliberate indifference to a serious medical need, a

plaintiff must demonstrate that [the] defendants' response to the need was more than "merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law."). Moreover, "as *Estelle* teaches, whether government actors should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment." *Adams*, 61 F.3d at 1545; *Garvin v. Armstrong*, 236 F.3d 896, 898 (7th Cir. 2001) ("A difference of opinion as to how a condition should be treated does not give rise to a constitutional violation."); *Hamm v. DeKalb County*, 774 F.2d 1567, 1575 (11th Cir. 1985) (mere fact inmate desires a different mode of medical treatment does not amount to deliberate indifference violative of the Constitution); *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981) (prison medical personnel do not violate the Eighth Amendment simply because their opinions concerning medical treatment conflict with that of the inmate-patient). Self-serving statements by a plaintiff do not create a question of fact in the face of contradictory, contemporaneously created medical records. *See Bennett v. Parker*, 898 F.2d 1530 (11th Cir. 1990).

X-ray images of Owens' shoulder taken on June 22, 2007, during his confinement at a private prison in Louisiana indicated mere "degenerative changes of the AC joint and glenohumeral joint. No fractures or dislocation are present." *Exhibit 4 to the Special Report of CMS (Medical Records of Raymond Owens) - Doc. No. 24-4* at 82. Prior to his transfer to Draper, Owens suffered from tendinitis in his shoulder, bone spurs, and degenerative changes in the acromioclavicular ligament and glenohumeral joint but no tears in the ligaments, tendons,

15

muscles or rotator cuff.  *Id*. at 81.  Owens received medications to alleviate his pain and was referred to outside orthopedic specialists for evaluation.  *Id*. at 80-85.  These medical professionals chose a conservative course of treatment for Owens' shoulder condition, including prescription of pain medications, heat therapy and a steroid injection.  *Id*.

In November of 2007, Owens returned to incarceration within a facility operated by the Alabama Department of Corrections - Draper Correctional Facility.  For the first several months of his confinement at Draper, Owens routinely sought treatment for numerous medical issues including hypertension, acid reflux, nausea, decreased hearing and blurred vision.  Medical personnel evaluated each of these complaints and prescribed medications, ordered tests, provided hearing aids and furnished eyeglasses for the treatment of Owens' conditions. However, during this period, the medical records demonstrate that Owens did not complain to health care personnel of any issues associated with his right shoulder.

In early May of 2008, Owens submitted his first request to Draper medical personnel regarding pain in his right shoulder. An affidavit filed by Dr. Hugh Hood, the Associate Regional Medical Director for CMS, describes the treatment provided to Owens for his right shoulder upon his initial request for treatment.

> The medical records ... reveal that Mr. Owens has been seen continuously for issues related to his right shoulder from May 2008 through the present time.
> On May 21, 2008, a request was submitted [by correctional medical personnel] for Mr. Owens to be seen by an orthopedist due to on-going right shoulder pain with decreased range of motion. The doctor's note from May 21, 2008, indicates that Mr. Owens had fallen on his shoulder in 2007, and was suffering from shoulder pain at night. The note indicates that a 2007 MRI revealed a possible supraspinatus tear.
> An x-ray was taken of Mr. Owens' right shoulder on June 6, 2008.  [This] x-ray was read by the radiologist as follows:

16

> There is no change indicating fracture, dislocation,
> or lytic or blastic lesion of the right shoulder. The
> soft tissues are intact, as are the bones of the thorax,
> clavicle, scapula, and humerus visualized.
> Impression: Normal right shoulder.

On June 4, 2008, Mr. Owens was seen by Tai Q. Chung, M.D. [a board certified orthopedic surgeon] for an orthopedic consult. The examination by Dr. Chung revealed as follows:

> [Owens] is ... 6'1" and weighs 231 pounds. There
> was tenderness anteriorly of the right shoulder.
> Impingement test is positive. There is weakness in
> abduction and external rotation. Range of motion is
> forward. Elevation and abduction are 90%.
> External rotation at 20 degrees. Sensation is okay
> to light touch in the hand. Motor strength is normal
> in the fingers. Radial pulse is present.
> Impression: Possible rotator cuff tear of the right
> shoulder.
> Plan: I would like for him to get a new MRI scan,
> or at least have the old films for my review before
> we decide on surgery. I have discussed risks of
> surgery with him today. Risks of surgery include
> anesthesia, infection, neurovascular and tendon
> damage, incomplete resolution of symptoms and
> return of function in the shoulder, especially in view
> of the long duration of the [possible rotator cuff]
> tear. He understands [the risks] and wishes to
> proceed with surgery. We will plan this after we
> have the MRI scan for review.

The MRI of Owens' right shoulder [ordered by Dr. Chung] was taken on August 6, 2008, and was read by the radiologist as follows:

> History: Right shoulder pain. Limited range of
> motion.
> Technique: Multiplanar multiecho MR right
> shoulder.
> Findings: There is some mild increased signal of
> the supra spinatus in the infraspinatus tendon
> distally that appears consistent with tendoninosis.
> No rotator cuff tear is noted. There is hypertrophic
> change in the acromioclavicular joint, with some
> mild encroachment on the supraspinatus muscle.

>The biceps tendon and the glenoid labrum appear intact. Bone marrow signals appear to be unremarkable. A small amount of fluid in the subacromial bursa may represent some bursitis. Impression: Supraspinatus and infraspinatus mild tendonitis. Subacromial bursitis. Hypertrophic change of the acromioclavicular joint.

Mr. Owens was again seen by Dr. Chung on September 22, 2008. Dr. Chung's notes indicated that the MRI revealed no rotator cuff tear, but there were suspicions of infraspinatus tendonitis.

On September 24, 2008, an x-ray was again taken of Mr. Owens' right shoulder. The findings of the x-ray were as follows:

>There is no change indicating fracture, dislocation, or lytic blastic lesion of the right shoulder. The soft tissues are intact, as are the bones of the thorax, clavicle, scapula, and humerus visualize[d]. Impression: Normal right shoulder.

Due to the infraspinatus tendonitis [causing right shoulder impingement syndrome], surgery was performed by Dr. Chung on October 3, 2008. [Dr. Chung again discussed the risks associated with surgery. Owens communicated he understood the risks and wished to proceed with surgery.] Dr. Chung performed decompression arthroscopic surgery on Mr. Owens' right shoulder.

The [correctional] physician's notes from October 6, 2008, indicate that Mr. Owens informed the physician: "I am doing alright. It is hurting a little bit." The physician's notes indicate that Mr. Owens was doing better post-decompression arthroscopy of the right rotator cuff. The surgical scars, according to the [attending] physician's notes, appeared to be healing well.

Mr. Owens was seen for a follow-up visit with Dr. Chung on October 20, 2008.

A follow-up x-ray of Mr. Owens' right shoulder was again taken on October 21, 2008. Again, the findings of the x-ray of Mr. Owens' right shoulder were as follows:

>There is no change indicating fracture, dislocation, or lytic or blastic lesion of the right shoulder. The soft tissues are intact as are the bones, the thorax, clavicle, scapula, and humerus visualized. Impression: Stable, normal right shoulder.

Mr. Owens continued to complain of right shoulder pain, post-surgery, and received a right shoulder [steroid] injection on July 8, 2009.

Subsequent to the right shoulder surgery [performed by Dr. Chung] due

to the infraspinatus tendonitis, Mr. Owens has continued to complain of pain in his right shoulder.  Mr. Owens has been treated with pain medication and steroids for the pain in his right shoulder.

Mr. Owens has been repeatedly seen and treated for pain in his right shoulder at the Draper Correctional Facility and Limestone Correctional Facility by the nurses and physicians at the Health Care Units.

* * *

At no time has Mr. Owens ever been refused appropriate treatment for issues related to his right shoulder.

I am familiar with the standard of care of physicians for examining and treating patients such as Raymond Owens.

It is my professional opinion, based upon my review of the medical records pertaining to the care and treatment of Owens, and my medical education, training, and experience, that the medical care provided to Owens while incarcerated at the Draper and Limestone ... Correctional Facilities, since November 1, 2007, has at all times met and/or exceeded the [appropriate] standard of care....

*Exhibit A to the Special Report of CMS (Affidavit of Hugh Hood) - Doc. No. 24-1 at 3-7.*

In his affidavit, Dr. Chung addresses Owens' claims, in pertinent part, as follows:

On June 4, 2008, I saw Raymond Owens in my office with a complaint of right shoulder pain.  I took a history and performed a physical examination of the patient.  There was tenderness anteriorly at the right shoulder.  The impingement test was positive.  There was some weakness in abduction and external rotation. Motor strength in the fingers was normal. I ordered an MRI and discussed surgical options and the risks thereof.  Mr. Owens indicated he wanted to proceed with surgery.

On September 22, 2008, Mr. Owens returned to my office for follow up care.  An MRI performed on August 6, 2008 ... indicated no tear of the rotator cuff.  There were hypertrophic changes in the AC joint with mild encroachment. I discussed treatment options with Mr. Owens which included living with the pain or trying arthroscopy and decompression.  I discussed fully with Mr. Owens the risks of surgery [and he advised he wanted to proceed with surgery].

On October 3, 2008, Mr. Owens underwent right shoulder arthroscopy and decompression.  Mr. Owens was returned to the recovery room in satisfactory condition.

I saw Mr. Owens again on October 20, 2008 for follow up and removal of sutures.

19

The medial services I provided to Mr. Owens met the applicable standard of care for orthopedic surgery.  At all times, I provided medical services to Mr. Owens which met or exceeded the applicable standard of care.

*Exhibit 1 to the Special Report of Dr. Tai Q. Chung (Affidavit of Dr. Tai Q. Chung) - Doc. No. 30-1* at 2.  The synopsis of treatment provided to Owens as detailed in the affidavits submitted by the defendants is confirmed by the medical records filed in this case and there is nothing before the court which undermines the validity of these records.

The operative report prepared regarding the surgical procedure performed by Dr. Chung sets forth the specific details of the procedure. The relevant portion of this report reads as follows:

FINDINGS OF SURGERY: Arthroscopic examination of glenohumeral joint showed a normal bicep1`s tendon and anterior labrum, normal subscapularis tendon, normal anterior inferior lip and ligaments, slightly softened and frayed humeral head and glenoid surface.

There is no tear of the supraspinous tendon

Examination of the subacromial space showed heavy scarring of the subacromial bursa.  There is an inferiority projecting anterior end of the acromion.  There is an ostephyte that is extending inferiorly from the distal end of the clavicle.

PROCEDURE: With the patient under satisfactory anesthesia in the barber chair position with all pressure points well padded and the head and neck were secured, the right shoulder and arm were prepped with Betadine and draped free in the usual fashion. A posterior portal was used to introduce the arthroscope. A lateral portal was used to introduce the instruments.

The glenohumeral joint was 1st examined.  Findings are above.  All structures were probed with a needle to make sure that they were stable.

The scope was then placed in the subacromial space.  A radiofrequency vaporizer was used to remove as much of the thickened subacromial bursa for adequate visualization.  A bur was then used to bur away the prominent anterior overhang

of the acromion and of the undersurface of acromion.

The osteophyte coming down from the distal end of the clavicle was then burred flat.  It was seen after this, there was much more space in the subacromial space.  The area was irrigated.  The skin was closed with 4-0 nylon sutures.  Twenty mL of 0.25% Marcaine were injected in the subacromial space.  A sterile dressing was applied.  A sling was applied.  The patient was then awakened and returned to recovery room in satisfactory condition.

*Exhibit 2 to the Special Report of Dr. Tai Q. Chung (Operative Report - Doc. No. 30-2* at 1-2.

Under the circumstances of this case, the court concludes that the course of treatment undertaken by the defendants in addressing Owens' shoulder condition did not violate his constitutional rights.  Upon his initial request referencing shoulder pain, correctional medical personnel referred Owens to Dr. Chung for additional evaluation and treatment.  After Dr. Chung performed surgery on Owens' shoulder and released Owens from his care, correctional medical personnel continued to administer treatment to Owens for his shoulder pain and based their treatment decisions on Owens' medical history, examinations performed on Owens, their evaluations of his condition and the results of various test procedures.  The undisputed medical records further demonstrate that correctional medical personnel routinely examined Owens regarding his complaints of shoulder pain, performed frequent evaluations of his condition, prescribed various types of medication to alleviate his discomfort, dispensed medical profiles, continuously monitored his condition and ordered adjustments to his prescribed medications.  The medical care Owens received at Draper and Limestone was certainly not "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to the fundamental fairness." *Harris*, 941 F.2d at 1505.  The allegations presented by Owens simply

21

fail to establish deliberate indifference by the defendants.  *Garvin*, 236 F.3d at 898 (difference of opinion regarding manner in which condition should be treated fails to demonstrate a constitutional violation); *Adams*, 61 F.3d at 1545-1546 (Whether medical personnel "should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis" on which to ground constitutional liability.  In addition, the inmate's allegation that his prison physician did not diligently pursue alternative means of treating condition "did not 'rise beyond negligence'... to the level of deliberate indifference."); *Hamm*, 774 F.2d at 1505 (inmate's desire for some other form of medical treatment does not constitute deliberate indifference violative of the Constitution); *Franklin*, 662 F.2d at 1344 (simple divergence of opinions between medical personnel and inmate-patient do not violate the Eighth Amendment).

It is undisputed that Owens received medical care for his complaints of shoulder pain immediately upon his request for treatment.  It is likewise evident that the defendants rendered treatment to Owens in accordance with their professional judgment.  Based on well settled law cited herein, Owens' mere desire for a different mode of medical treatment does not constitute deliberate indifference.  In addition, Owens has failed to present any evidence which indicates the defendants knew that the manner in which they provided treatment created a substantial risk to his health and that with this knowledge consciously disregarded such risk.  The record is therefore devoid of evidence, significantly probative or otherwise, showing that the defendants acted with deliberate indifference to Owens' medical condition.  Consequently, summary judgment is due to be granted in favor of defendants CMS and Chung.  *Carter*, 352 F.3d at 1350.

## IV.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.  The defendants' motions for summary judgment be GRANTED.

2.  Judgment be GRANTED in favor of the defendants.

3.  This case be dismissed with prejudice.

4.  The costs of this proceeding be taxed against the plaintiff.

It is further

ORDERED that on or before March 1, 2013, the parties may file objections to this Recommendation.  Any objections filed must clearly identify the findings in the Magistrate Judge's Recommendation to which the party is objecting. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on

September 30, 1981.

DONE, this 15th day of February, 2013.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
CHIEF UNITED STATES MAGISTRATE JUDGE